UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JULIE ELLEN OLDHAM,<br><br>      Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security,<br><br>      Defendant. | Case No. C12-167-JCC-BAT<br><br>**REPORT AND**<br>**RECOMMENDATION** |

   Julie Ellen Oldham seeks review of the denial of her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  She contends that the ALJ erred by:  (1) failing to identify all of her severe impairments at step two, (2) improperly assessing her residual functional capacity, (3) failing to consider all of the relevant evidence, and (4) improperly finding she could perform her past relevant work at step four.  Dkt. 16 at 1.  For the reasons set forth below, the Court recommends that the Commissioner's decision be **REVERSED** and **REMANDED** for further administrative proceedings.

## I.   FACTUAL AND PROCEDURAL HISTORY

   Julie Ellen Oldham was born in 1959 and was 51 years old at the time of the second hearing before the ALJ.  Tr. 427.  She has a high school education, and previously worked as a

home health aide, housekeeper, and receptionist.  Tr. 124, 439-40.  On June 27, 2006, she

applied for benefits, alleging disability beginning September 22, 2005.  Tr. 84-95.

Ms. Oldham's applications were denied initially and on reconsideration.  Tr. 47-55.  She

requested a hearing which took place on December 16, 2008.  Tr. 22-42.  On January 28, 2009,

the ALJ issued a decision finding Ms. Oldham not disabled.  Tr. 11-21.  The Appeals Council

denied Ms. Oldham's request for review, Tr. 1-3, and she filed a complaint in the United States

District Court for the Western District of Washington.  On October 28, 2009, the Court issued an

Order remanding for further administrative proceedings pursuant to the parties' stipulated

motion.  *Oldham v. Astrue*, No. 09-794-MJP (W.D. Wash. 2009); Tr. 477-78.

Ms. Oldham filed a subsequent application for SSI on February 19, 2009.  Tr. 549-55.

Her application was denied initially and on reconsideration, and she timely filed a request for a

hearing on October 29, 2009.  Tr. 487.  On August 6, 2010, the ALJ deemed the subsequent

application duplicative, consolidated it with the claim remanded by the District Court, and

dismissed her request for hearing.  *Id.*

On August 17, 2010, the ALJ held another hearing.  Tr. 436-58.  On October 7, 2010, the

ALJ issued a decision finding Ms. Oldham not disabled.  Tr. 418-29.  The Appeals Council

denied Ms. Oldham's request for review, Tr. 918-20, making the ALJ's ruling the final decision

of the Commissioner.  On January 30, 2012, Ms. Oldham timely filed the present action

challenging the Commissioner's decision.  Dkt. 1.

## II.      THE ALJ'S DECISION

Utilizing the five-step disability evaluation process, [1] the ALJ made the following

findings:

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

REPORT AND RECOMMENDATION - 2

**Step one:**  Ms. Oldham has not engaged in substantial gainful activity since September 22, 2005, the alleged onset date.  Tr. 421.

**Step two:**  Ms. Oldham has the following severe impairments:  patellofemoral pain syndrome and bilateral degenerative joint disease.  *Id*.

**Step three:**  These impairments do not meet or equal the requirements of a listed impairment.[2]  Tr. 424.

**Residual Functional Capacity:**  Ms. Oldham has the residual functional capacity to perform light work, except she is able to frequently engage in balancing, stooping, kneeling, crouching, and crawling; she is able to climb ramps and stairs occasionally; and she must avoid climbing ladders, ropes, and scaffolding.  Tr. 424-25.

**Step four:**  Ms. Oldham is capable of performing her past work as a receptionist.  Tr. 426.

**Step five:**  Ms. Oldham is capable of performing other jobs existing in significant numbers in the national economy and, therefore, is not disabled.  Tr. 427.

### III.   DISCUSSION

**A.   Identification of Severe Impairments at Step Two**

Ms. Oldham argues that the ALJ failed to properly consider all of her severe impairments at step two.  Dkt. 16 at 15.  She contends that the medical evidence shows that her shoulder tendinitis and abdominal adhesions are severe impairments.

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities.  *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)

---

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 3

1  (quoting Social Security Ruling ("SSR") 85-28).  "[T]he step-two inquiry is a de minimis

2  screening device to dispose of groundless claims."  *Id.* (citing *Bowen*, 482 U.S. at 153-54).

3          In the present case, the record shows that plaintiff presented to the emergency department

4  on January 22, 2007, after she slipped on some icy steps and landed on her left shoulder and

5  upper arm.  Tr. 229.  X-rays obtained showed "no abnormalities other than a possible calcific

6  tendinitis."  Tr. 230.  Ms. Oldham was diagnosed with contusion, sprain, and calcific tendinitis

7  of the left shoulder.  *Id*.  She was given a sling, but advised against prolonged use of it, and

8  prescribed Vicodin and cyclobenzaprine.  *Id*.

9          Ms. Oldham followed up with her primary care physician, Denis Foster, M.D., on

10  January 30, 2007.  Tr. 277, 291-93.  Dr. Foster noted that Ms. Oldham has had mild symptoms in

11  both shoulders for years prior to her injury.  Tr. 277.  On examination of her left shoulder, he

12  found decreased range of motion and muscle strength, positive bicep groove pain, subacromial

13  space tenderness, and crepitus.  Tr. 291-92.  He diagnosed tendinitis and calcific shoulder and

14  prescribed cyclobenzaprine and a cortisone injection.  Tr. 292.

15          On September 19, 2007, Ms. Oldham presented to Dr. Foster with right shoulder pain.

16  Tr. 257-60.  She reported that her shoulder pain had improved following the cortisone injection

17  in January, but had worsened recently.  *Id*.  She indicated that she performs range of motion

18  exercises daily, but cannot use the shoulder for prolonged periods of time at any tasks, and that

19  using a mouse is painful.  Tr. 257.  The physical examination showed that she could not

20  internally rotate her arm behind her back, external rotation was 0 degrees, and she had moderate

21  tenderness over the biceps tendon.  Tr. 259.  Dr. Foster opined, "I think the combination of her

22  knee pain and shoulder pain continue to keep her totally disabled.  It may be possible to improve

23  shoulder pain with steroid injection."  *Id*.

REPORT AND RECOMMENDATION - 4

On December 2, 2008, Ms. Oldham again complained of shoulder pain which was worse when she did heavy housework and better when she did less.  Tr. 761.  Dr. Foster recommended anti-inflammatory medication, ice, and massage.  Tr. 764.  He opined that an injection could be needed, and that there could be a component of neck degenerative disc disease.  *Id.*

The ALJ considered Ms. Oldham's shoulder tendinitis but found, in view of the medical record, this impairment was not severe.  Tr. 17, 422.  The ALJ noted that Ms. Oldham's shoulder complaints were inconsistent and her recent complaints appeared to be caused by overexertion. Tr. 422.  The ALJ pointed out that Ms. Oldham mentioned shoulder pain only sporadically, noting that she failed to mention any shoulder pain during her June 2008 and April 2009 office visits.  *Id.*  The ALJ also referred to his prior decision in which he stated that "[d]espite continued normal exam findings, the claimant continued to receive periodic cortisone injections, which Dr. Foster opined should 'clear' the claimant's symptoms."  Tr. 17.  The ALJ concluded Ms. Oldham's shoulder complaints did not constitute a severe impairment.  Tr. 17, 422.

Ms. Oldham argues that the ALJ misstated Dr. Foster's treatment notes.  Dkt. 16 at 15. She notes that Dr. Foster stated that "[i]t *may* be possible to improve shoulder pain with steroid injection," Tr. 259, not that it should "clear" her symptoms as the ALJ stated.  She also points out that Dr. Foster's 2007 treatment notes indicate she was unable to rotate her arm behind her back, external rotation was 0 degrees, and she had moderate tenderness over the biceps tendon. Tr. 259.

The Court agrees that the ALJ misstated Dr. Foster's opinion.  Nevertheless, substantial evidence supports the ALJ's finding that Ms. Oldham's shoulder tendinitis was not severe.  As the Commissioner argues, Dr. Foster stated, "I think the combination of her knee pain and shoulder pain continue to keep her totally disabled," but it "may be possible to improve shoulder

1  pain with steroid injection." Tr. 259.  Ms. Oldham was treated with a cortisone injection and

2  was directed to call if her symptoms did not clear within ten days.  Tr. 257-58.  There is no

3  record that Ms. Oldham followed up.  Aside from the four treatment notes summarized above,

4  there is no record that Ms. Oldham's shoulder condition was more than transient or caused any

5  significant vocational limitations.

6          Even assuming the ALJ erred in neglecting to list her shoulder impairment at step two,

7  plaintiff does not succeed in showing that such error was harmful.  *See Lewis v. Astrue*, 498 F.3d

8  909, 911 (9th Cir. 2007) (finding any error in failing to include a condition at step two is

9  harmless if the ALJ considered any limitations posed by the condition at step four).  Contrary to

10  Ms. Oldham's claim, the ALJ considered Dr. Foster's opinion that the combination of her knee

11  pain and shoulder pain "continue to keep her totally disabled," and expressly rejected it.  Tr. 19.

12  The ALJ noted that Ms. Oldham received relatively little treatment other than occasional

13  cortisone injections.  Again, aside from the four treatment notes summarized above, there is no

14  record that Ms. Oldham's shoulder condition was more than transient or caused any vocational

15  limitations.  Contradictions between a doctor's assessment of a claimant's abilities and the

16  doctor's treatment notes "is a clear and convincing reason for not relying on the doctor's

17  opinions."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (finding discrepancy

18  between a doctor's assessment of limitations and the doctor's treatment notes is a clear and

19  convincing reason to reject the opinion).  Plaintiff argues that she testified arm pain likely from

20  her shoulder injury limited her ability to keyboard or write more than 15 minutes and grip items.

21  However, Ms. Oldham has not contested the adverse credibility finding, so her own symptom

22  testimony cannot bolster her argument.  In sum, substantial evidence supports the ALJ's finding

23  that Ms. Oldham's shoulder condition is not a severe impairment.

REPORT AND RECOMMENDATION - 6

1    With regards to her abdominal adhesions, the ALJ stated in the first decision,

2    The claimant also mentioned abdominal adhesions, though there is scant reference
     to such in the record. In a clinical note regarding surgery to remove her ovarian
3    cyst, there was reference to "multiple lower abdominal abscesses and then four
     major surgeries and two minor surgeries related to that." [Tr. 388]. However,
4    there is no indication that such surgeries were performed after the alleged onset
     date. While there was a reference in the ovarian cyst removal surgery report
5    noting the continued existence of such adhesions, there is no evidence that they
     caused any limitations. [Tr. 390]. Thus, the abdominal adhesions also do not
6    constitute a severe impairment.

7    Tr. 17.

8    In the second decision, the ALJ stated,

9    The records show that she had sudden abdominal pain after eating dinner in
     September 2009. She went to the emergency room. She underwent exploratory
10   laparotomy to treat a partial small bowel obstruction. [Tr. 598-730]. In October
     2009, she reported that she "moved her bowels and felt great." Her pain was
11   under control. [Tr.656]. She then underwent several additional procedures
     related to abdominal abscesses over the next several weeks. Provider Paul
12   Fredette, MD, explained that her small bowel resection went smoothly but that
     she had an interabdominal abscess stemming from the resection. By December
13   2009, Dr. Fredette stated that she was doing "very well" and that she had only
     "some" discomfort over the incision site, and in February 2010, Dr. Foster wrote
14   that her obstruction was "clearing" and that the claimant was not taking antibiotic.
     [Tr. 667, 886]. There is little or no mention of the bowel resection or related
15   treatments after February 2010.

16   Tr. 424. The ALJ questioned whether the abdominal adhesions noted in the first decision and the

17   new bowel obstruction were a part of the same underlying problem. *Id.* The ALJ found that

18   even if these two problems were connected, "the evidence establishes that the underlying

19   problem became limiting in September 2009 and resolved shortly after February 2010." *Id.* The

20   ALJ concluded that Ms. Oldham's abdominal condition did not significantly affect her ability to

21   perform work related activities for a period longer than 12 months and, therefore, was not a

22   severe impairment. *Id.*

23   Ms. Oldham avers that the record reflects that she suffers from abdominal adhesions and

REPORT AND RECOMMENDATION - 7

1  ongoing stomach problems.  She contends that these conditions should have been found severe at

2  step two.  However, a diagnosis alone is not sufficient to establish a severe impairment.  Instead,

3  the claimant must show that her medically determinable impairments are severe.  20 C.F.R. §§

4  404.1520(c), 416.920(c).  Although Ms. Oldham argues that the evidence supports a conclusion

5  that these conditions are severe impairments, it is not the function of this Court to consider

6  whether there is substantial evidence to support her theory of the case, but rather whether

7  substantial evidence supports the ALJ's finding.  *See Flaten v. Sec. of Health & Human Servs.*,

8  44 F.3d 1453, 1457 (9th Cir. 1995) ("The scope of our review, however, is limited:  we may set

9  aside a denial of benefits only if it is not supported by substantial evidence or if it is based on

10  legal error.").  As the Commissioner argues, Ms. Oldham has not contested the ALJ's adverse

11  credibility finding, so her own symptom testimony cannot bolster her argument.

12       Based upon the record, the Court finds substantial evidence supports the ALJ's finding

13  that Ms. Oldham's abdominal adhesions and stomach problems were non-severe impairments.

14  As indicated above, the medical evidence clearly showed the presence of abdominal adhesions,

15  but there was no evidence they caused any limitations.  Tr. 390, 794.  As the Commissioner

16  argues, Ms. Oldham reported having abdominal pain in September 2009, she underwent a small

17  bowel resection and there was little mention of abdominal symptoms after February 2010.  Dkt.

18  20 at 6.  Substantial evidence supports the ALJ's step two finding that Ms. Oldham's abdominal

19  condition did not significantly affect her ability to perform work related activities for a period

20  longer than 12 months and, therefore, was not a severe impairment.  *See* 42 U.S.C. § 423

21  (d)(1)(A) (the term "disability" means "the inability to engage in any substantial gainful activity

22  by reason of any medically determinable physical or mental impairment . . .  which has lasted or

23  can be expected to last for a continuous period of not less than 12 months.").

REPORT AND RECOMMENDATION - 8

Ms. Oldham asserts that even if the abdominal adhesions are not the source of her pain, the ALJ erred in failing to find her multiple episodes of cholecystitis severe. Dkt. 16 at 18. She points to treatment notes from provider Diane Arvin, M.D., who noted that Ms. Oldham was hospitalized in June 2007 for right upper quadrant pain. Tr. 233. However, the ALJ specifically addressed this condition, noting that the abdominal ultrasound performed the night of her admission showed only "minimal sludge within the gallbladder neck, no convincing evidence of cholecystitis or biliary obstruction." Tr. 233, 423. Likewise, a CT scan showed "no evidence of acute abnormality in the abdomen or pelvis." Tr. 233. Treating provider, Deborah McClary, M.D., stated that she may have "'passed' some sludge matter but stated the findings were very 'soft' and not clearly indicative of a gallbladder pathology." Tr. 423. Dr. McClary indicated she had the option to remove her gallbladder. *Id*. Ms. Oldham's pain resolved and she was released from the hospital the next day. Tr. 233-34. The ALJ found there was insufficient evidence to establish a medically determinable impairment, "especially where the record contains little follow up treatment for any possible gallbladder problem." Tr. 423. The ALJ concluded that even if it was a medically determinable impairment there was no evidence that it caused any physical limitations and, therefore, was not severe. Substantial evidence supports the ALJ's decision.

Ms. Oldham also asserts that the ALJ failed to consider that Dr. Foster indicated she "'experiences tingling down spine occasionally and arm tingling[,]' as well as peripheral edema." Dkt. 16 at 19. However, Ms. Oldham does not explain this assertion. The Court need not address an alleged error that is not argued with any specificity in the party's briefing. *Carmickle v. Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008). Ms. Oldham has not established error in the ALJ's consideration of her impairments at step two.

REPORT AND RECOMMENDATION - 9

**B.      The ALJ's residual functional capacity assessment**

At step four, the ALJ must identify the claimant's functional limitations or restrictions and assess the claimant's work related abilities on a function-by-function basis, including a required narrative discussion.  *See* 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p.  Residual functional capacity ("RFC") is the most a claimant can do considering his or her limitations or restrictions.  *See* SSR 96-8p.  The ALJ must consider the limiting effects of all of the claimant's impairments, including those that are not severe, in determining RFC.  20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p.

In this case, the State agency medical consultant, Alfred Dickson, M.D., opined that Ms. Oldham had the RFC for light work with additional postural limitations of occasionally climbing ramps and stairs; never climbing ladders, ropes, and scaffolds; and frequently stooping, kneeling, crouching, and crawling.  Tr. 192-93.  The ALJ adopted this opinion in the first decision, finding it was consistent with the record as a whole, and specifically with the opinion of treating orthopedist, Patrick M. Lyons, M.D., who also opined that Ms. Oldham had postural limitations.  Tr. 19.  The ALJ concluded that Ms. Oldham had the RFC to perform the full range of light work, but did not include any of the postural limitations articulated in Dr. Dickson's opinion.  Tr. 18-20.  On remand, the ALJ was instructed to "(1) reevaluate the claimant's residual functional capacity, taking into account all of her severe and non-severe impairments and the medical opinions of record; (2) obtain additional medical evidence if warranted; and (3) complete the sequential evaluation process."  Tr. 477, 481.  In his second decision, the ALJ found Ms. Oldham had the RFC to perform light work with the additional postural limitations identified by Dr. Dickson.  Tr. 424-25.  He found no other limitations or restrictions.  Tr. 425.

Ms. Oldham argues that the ALJ failed to comply with the Court's remand order.  Dkt.

1  She contends that the ALJ believed that the only error with his prior RFC assessment was that he

2  failed to include all of the postural limitations articulated in the State agency medical

3  consultant's opinion he purportedly relied upon.  She asserts that the ALJ also erred in failing to

4  incorporate all of the limitations identified by Dr. Lyons, which the ALJ adopted as consistent

5  with Dr. Dickson's opinion.  Tr. 20.

6          On December 29, 2006, Dr. Lyons examined Ms. Oldham and completed a WorkFirst

7  assessment (signed on January 9, 2007), which indicated that Ms. Oldham was capable of light

8  work, including the ability to sit, stand, or walk through a six-hour workday.  Tr. 220-21.

9  However, Dr. Lyons opined that Ms. Oldham is unable to repetitively use her feet and legs

10  ("raising, pushing, i.e., operate foot controls") for more than one hour, or to frequently stoop.  *Id.*

11          The ALJ specifically noted these limitations in his first decision, yet found this opinion

12  was consistent with Dr. Dickson's opinion.  Tr. 20.  Ms. Oldham asserts the ALJ's RFC

13  assessment is not supported by substantial evidence as it is contrary to the opinions he

14  purportedly relied upon.  She contends that Dr. Lyons's opinion that she cannot stoop, Tr. 220, is

15  inconsistent with Dr. Dickson's opinion that she can stoop frequently, Tr. 193.  In addition, she

16  contends Dr. Lyons's opinion that she is limited in using her feet and legs, Tr. 220, is

17  inconsistent with Dr. Dickson's opinion that she is unlimited in her ability to push or pull with

18  her lower extremities, including the operation of foot controls.  Tr. 220.  An RFC that fails to

19  take into account a claimant's limitations is erroneous.  *See Valentine v. Comm'r of Soc. Sec.*

20  *Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

21          The Commissioner concedes that the ALJ did not incorporate all of Dr. Lyons's

22  limitations into the RFC, but argues that the ALJ reasonably concluded "that they were

23  consistent with the State agency nonexamining consultative physician, Alfred Dickson, M.D.,

REPORT AND RECOMMENDATION - 11

and with the full range of light work." Dkt. 20 at 9.  However, as Ms. Oldham points out, to be

capable of performing a full range of light work, a claimant must have the ability to stand and

walk for six hours of an 8-hour workday, and must be able to push and pull leg controls.  *See* 20

C.F.R. §§ 404.1567(b), 416.967(b); SSR 83-10.  Thus, the Commissioner's contention that the

ALJ reasonably accounted for Dr. Lyons's limitations is not persuasive.

      The Commissioner further contends that the ALJ properly gave more weight to the

opinion of Dr. Dickson because his opinion was more consistent with the overall record.  Dkt. 20

at 10.  He asserts that any discrepancies between the postural limitations opined by Dr. Dickson

and Dr. Lyons were accounted for.  Although the ALJ acknowledged Dr. Lyons's opinion, the

ALJ failed to address it further and implicitly rejected it without explanation, given the RFC

assessment.  The Commissioner's argument is, therefore, an improper post hoc rationalization

the Court cannot rely upon.  *See Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th

Cir. 2009) (holding the Court cannot affirm based on reasoning the ALJ did not discuss).  The

Court is thus left with a record that shows the ALJ, without explanation, failed to include all of

Ms. Oldham's limitations into the RFC.

      Ms. Oldham also argues that the ALJ failed to address a December 2006 treatment note

in which Dr. Lyons stated, "I think she could probably work in some form of light-duty that

would not involve squatting, stooping, crawling, climbing, or prolonged standing or walking."

Tr. 213.  The Commissioner asserts that the ALJ need not discuss all evidence presented, but

need only explain why "significant probative evidence has been rejected."  *Vincent v. Heckler*,

739 F.2d 1393, 1395 (9th Cir. 1984).  Here, however, this evidence is significant because a

claimant must have the ability to stand and walk for six hours out of an 8-hour workday to be

capable of performing a full range of light work.  *See* 20 C.F.R. §§ 404.1567(b), 416.967(b);

REPORT AND RECOMMENDATION - 12

1   SSR 83-10.  In addition, this evidence is significant because it is inconsistent with Dr. Dickson's

2   opinion that Ms. Oldham could frequently crawl, occasionally climb ramps and stairs, and stand

3   and/or walk six hours in an 8-hour workday.  Tr. 192-93.  While the Commissioner asserts Dr.

4   Lyons's opinions were equivocal, the Court reviews the ALJ's decision "based on the reasoning

5   and factual findings offered by the ALJ — not post hoc rationalizations that attempt to intuit

6   what the adjudicator may have been thinking."  *Bray*, 554 F.3d at 1225.

7        Ms. Oldham also argues that the ALJ failed to address an October 2005 WorkFirst

8   assessment in which Dr. Lyons opined that she cannot perform frequent stooping or bending,

9   operate foot controls with her left foot, or stand more than 30 minutes in six-hour workday.  Tr.

10  227.  The Court agrees this evidence is also significant and probative and should be addressed on

11  remand.

12       In sum, the ALJ erred in making a RFC assessment that conflicted with opinions by Dr.

13  Lyons without explaining why his opinions were not adopted.  Although the Commissioner

14  attempted to explain why Dr. Lyons's opinions were not relevant, the Court concludes that the

15  ALJ's finding that Dr. Lyons's opinions were consistent with Dr. Dickson's opinions is not

16  based on substantial evidence in the record as a whole for the reasons stated above.  The ALJ

17  also failed to discuss significant probative evidence contained in the December 2006 and

18  October 2005 records.  These errors are not harmless as they effect the propriety of the ALJ's

19  assessment of Ms. Oldham's RFC.  Therefore, this matter should be reversed and remanded for

20  further proceedings.

21       Ms. Oldham also argues the ALJ should have accepted the opinions of Dr. Foster.  Dkt.

22  16 at 23.  On September 26, 2005 and March 21, 2006, Dr. Foster filled out WorkFirst

23  assessments in which he opined that, due to arthritis and patellofemoral pain syndrome, Ms.

1  Oldham was limited to sedentary work, including lifting no more than 10 pounds, walking no

2  more than three hours, and standing no more than one hour.  Tr. 224-25.

3  　　　　The ALJ rejected Dr. Foster's opinion that Ms. Oldham was limited to sedentary work,

4  finding them not persuasive given the "fairly benign" examinations in the record.  Tr. 20, 245-

5  340, 422 (incorporating Findings of Fact nos. 3 and 5 from the January 2009 decision by

6  reference to the extent it is consistent with the later decision).  Clinical notes on the same day of

7  his most recent assessment show that Ms. Oldham's knee was mildly warm to touch with mild

8  effusion, her knee had free range of motion from 100 to full extension, there was no laxity, and

9  mild joint line tenderness.  Tr. 299.  Dr. Foster also indicated that she walked one and a half

10  miles for exercise three days per week.  Tr. 298.  Contradictions between a doctor's assessment

11  of a claimant's abilities and the doctor's clinical notes and observations is a clear and convincing

12  reason for not relying on the doctor's opinion.  *Bayliss*, 427 F.3d at 1216).

13  　　　　The ALJ also noted that "[g]iven the lack of objective evidence to substantiate [his]

14  opinion, it must have been based on the claimant's subjective complaints, which are subject to

15  significant credibility issues . . . .  For example, Dr. Foster opined that the claimant's chronic

16  knee pain would eventually require a knee arthroplasty, as the claimant told Dr. Foster that this

17  was the opinion of the orthopedic surgeon; however, at each visit, Dr. Lyons opined that there

18  was no surgical correction for her complaints, recommended conservative care, and concluded

19  that the claimant was able to work light duty."  Tr. 20.  Ms. Oldham points out, however, she

20  accurately reported to Dr. Foster that Dr. Lyons opined that she was not a surgical candidate.  Tr.

21  276.  The Court agrees this was not a clear and convincing reason for not relying on Dr. Foster's

22  opinion as the record does not support the ALJ's conclusion.  Given the existence of other valid

23  reasons for the ALJ's decision, however, this error can be deemed harmless.  *Carmickle*, 533

REPORT AND RECOMMENDATION - 14

1   F.3d at 1162-63.  The Court concludes the ALJ provided clear and convincing reasons for

2   rejecting Dr. Foster's opinion.

3        Ms. Oldham also argues that the ALJ failed to give clear and convincing reasons to reject

4   Dr. Foster's 2007 opinion that "the combination of her knee pain and shoulder pain continue to

5   keep her totally disabled."  Dkt. 16 at 23.  However, as discussed above, the ALJ considered Dr.

6   Foster's 2007 opinion and properly rejected it because there was no evidence that Ms. Oldham's

7   shoulder condition was more than transient or caused any significant vocational limitations.  Dr.

8   Foster stated, "I think the combination of her knee pain and shoulder pain continue to keep her

9   totally disabled," but it "may be possible to improve shoulder pain with steroid injection."  Tr.

10  259.  Ms. Oldham was treated with a cortisone injection and was directed to call if her symptoms

11  did not clear within ten days.  Tr. 257-58.  There is no record that Ms. Oldham followed up.

12  Contradictions between a doctor's assessment of a claimant's abilities and the doctor's treatment

13  notes "is a clear and convincing reason for not relying on the doctor's opinions."  *Bayliss*, 427

14  F.3d at 1216.  Substantial evidence supports the ALJ's conclusion.

15       Finally, Ms. Oldham argues that the ALJ failed to consider her obesity when determining

16  her RFC.  Dkt. 16 at 21.  Ms. Oldham, however, failed to suggest any obesity-related functional

17  limitations the ALJ failed to consider.  *See Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005).

18  Although Ms. Oldham's treating physicians were aware of her obesity, they did not identify any

19  functional limitations the ALJ did not consider.  The ALJ did not err.

20  **C.     The ALJ's step four determination**

21       Ms. Oldham contends the ALJ erred in determining she had past relevant work as a

22  receptionist because she only worked part-time, 20 hours per week, for six months, rather than a

23  year as the ALJ stated.  Dkt. 16 at 13-14; Tr. 427.  The Commissioner responds that substantial

REPORT AND RECOMMENDATION - 15

1   gainful activity may consist of work activity that was performed on a part-time basis.  Dkt. 20 at

2   17.  The Commissioner further asserts that any error was harmless because the ALJ also

3   performed an alternative step five analysis and found Ms. Oldham disabled under the Medical-

4   Vocational Guidelines.  The Court need not resolve these contentions as the ALJ erred in

5   evaluating the opinions of Dr. Lyons and must necessarily reevaluate on remand what impact, if

6   any, this has on Ms. Oldham's RFC, and steps four and five.

7   **D.      The ALJ's and the Appeals Council's duty to develop the record**

8          Ms. Oldham contends that the ALJ and the Appeals Council failed to properly develop

9   the record.  Dkt. 16 at 6-13.  She asserts that although the ALJ purported to consolidate her

10  February 2009 disability application, the ALJ actually failed to include all of the documents,

11  notices, and evidence related to the subsequent application into the record.  Dkt. 16 at 6.  She

12  further asserts that the record the ALJ compiled for the 2010 hearing fails to contain any

13  evidence that a qualified State agency medical consultant reviewed the medical evidence

14  submitted with the request for reconsideration.  Dkt. 16 at 7-9.  Ms. Oldham also contends that

15  the Appeals Council failed to correct the ALJ's error by failing to consolidate the February 2009

16  application into the record, and by failing to include in the record evidence she submitted to the

17  Appeals Council after the ALJ's October 7, 2010, decision.  Dkt. 16 at 11.

18         As this matter should be remanded for further proceedings, the Court need not resolve

19  these claims.  On remand, the ALJ should further develop the medical evidence as necessary.

20  **E.      Remand for benefits or further proceedings**

21         The Court may remand for an award of benefits where "the record has been fully

22  developed and further administrative proceedings would serve no useful purpose." *McCartey v.*

23  *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).  This occurs when:  (1) the ALJ has failed to

REPORT AND RECOMMENDATION - 16

1   provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no

2   outstanding issues that must be resolved before a determination of disability can be made; and

3   (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he

4   considered the claimant's evidence. *Id*. at 1076–77.

5       Here, there are outstanding issues that must be resolved.  As indicated above, the effect of

6   Ms. Oldham's knee impairment on her residual functional capacity is unresolved and Dr.

7   Lyons's opinion must be reassessed.  Therefore, remand is appropriate in order to allow the

8   Commissioner the opportunity to consider the medical evidence as a whole and to incorporate

9   the properly considered medical evidence into the consideration of plaintiff's RFC.

10                  **IV.     CONCLUSION**

11      For the foregoing reasons, the Court recommends that the Commissioner's decision be

12   **REVERSED** and the case be **REMANDED** for further administrative proceedings.  On remand,

13   the ALJ should utilize the five step disability evaluation process and (1) further develop the

14   medical evidence as necessary, (2) reevaluate the opinions of Dr. Lyons, (3) reevaluate Ms.

15   Oldham's RFC, and (4) reassess steps four and five of the sequential evaluation process with the

16   assistance of a vocational expert if deemed appropriate.  A proposed order accompanies this

17   Report and Recommendation.

18      Objections, if any, to this Report and Recommendation must be filed and served no later

19   than **September 19, 2012.**  If no objections are filed, the matter will be ready for the Court's

20   consideration on **September 21, 2012**.  If objections are filed, any response is due within 14

21   days after being served with the objections.  A party filing an objection must note the matter for

22   the Court's consideration 14 days from the date the objection is filed and served.  Objections and

23   responses shall not exceed twelve pages.  The failure to timely object may affect the right to

REPORT AND RECOMMENDATION - 17

1    appeal.

2          DATED this 5th day of September, 2012.

3

4                                              _____
                                               BRIAN A. TSUCHIDA
5                                              United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 18